Keeping this state of Illinois. At the end of last year? Depending on the attorney missed the  Illinois. Mr. Rogers. Thank you. Good morning. I'm here on behalf of the    I'm here to address the defense. There's no question that he knowingly made a threat. There's no question that the threat was conveyed indirectly by a third party police officer. There's no question it was conveyed indirectly? It was conveyed by a police officer. Why wouldn't that qualify? Because it's not knowingly. A state officer always modifies conveyed. He has to know when he makes the statement it's going to be conveyed. How would he not know that? Isn't that kind of the key? That is what the state emphasizes. It certainly is a very relevant factor. What if he had said if this weren't a size day I'd run him through? What? If this weren't a size day I would run him through. It's a counterfactual condition. A size day was when the court was in session. If you took criminal law and studied the classic case on assault you'd find out this wasn't an assault because the condition which was if this weren't a size day I would run you through meaning with his rapier. Since it was a size day the person should not have been placed in imminent fear of bodily harm. I don't think your client actually had a counterfactual conditional wherein he said if it weren't for the fact that she was as good looking as she was or something of that nature I would run her through or do harm to her. So this isn't a counterfactual conditional is it? No, he didn't say He did threaten bodily harm. Yes, he did. And he did it to someone who has a duty to report threats relative to courthouse security to the appropriate authorities are they not? This isn't talking to your good humor man and saying that I'm going to hurt the judge. Right. I understand the context. There were I believe four correctional officers present when the threats were made. The officer who actually reported the threat was an Aurora police officer who was called out later to make an incident report about this. So that officer was not present. So there were four officers present. There were I believe according to the testimony of Officer Olad I hope I'm pronouncing that correctly that there were somewhere in the neighborhood of nine or ten detainees in the booking area. I'm not quite sure I understand what the point is that you're making. Are you suggesting that the state didn't prove beyond a reasonable doubt that this person didn't mean what he said or that beyond a reasonable doubt it wasn't established that a reasonable person would conclude that the threat wouldn't be conveyed to the judge? Or both of those? Or some other alternative? I'm actually not arguing either one of those. The state doesn't have to prove that he meant what he said. But they do have to prove something more than that a reasonable person would know or should have known that this would be conveyed. That's the point I tried to emphasize in the reply brief and I'm glad you brought that up. Because the cases that I cited, Comage and Nash, which the state never mentioned and doesn't dispute, stand for the proposition that knowledge is subjective. The test for it is subjective. Or to put it another way, it's defendant specific. It's not what a reasonable person would have known or should have known. It's what this particular defendant, whether Christopher Garcia, actually knew that what he said about what he was going to do to Judge Tracy was going to be relayed to her indirectly. And that, as you know, you're an experienced attorney and that's always been the issue in most of these cases. We have cases that actually say intent is not something you can look into a defendant's mind. You have to infer it, quote-unquote, from the context and the circumstances. And again, knowledge under the statute, I believe, says that the defendant is consciously aware that the result is practically certain to be caused by his conduct. So you're telling us then, as Justice Jorgensen aptly pointed out, consciously aware of all these threats and the presence of law enforcement officers right outside the courtroom, he wouldn't be consciously aware that the result is going to be conveyed to the judge? Well, I guess it depends on what you mean by practically certain, how high a bar that is. You know what certain is. Certain means 100%. Practically certain means something less than that. But probably it could be argued 100%, but practically is pretty close. I disagree with that. And I think it's significant that the only evidence that anybody had a duty, that the officers had a duty to report the threat to the judge, came from Deputy Olati. And I don't really dispute that such a duty exists or that it would have been prudent for an officer to do this, but that deputy testified that he couldn't conceive of a law enforcement officer not relaying a threat to the judge. And yet he also conceded that he didn't do it. So... When you say he didn't do it... He did not, he himself did not report the threat to Judge Tracy. He left. There's no evidence that he told the other officers, you better tell the judge that the other officers told him, don't worry, you can transport these people back to the jail. We'll take care of informing the judge. There's no evidence of any kind as to why he did not follow through on that. So the defendant, I don't think, is in any better position to know what is going to happen than the deputy was. The deputy basically just took the position, I ought to have informed the judge. So how would you ever... How could you ever prove what is exactly in the defendant's mind at the time he utters the threats? How could you ever prove that? Absent the defendant admitting it. Well, absent the defendant admitting it, obviously it's, you know, nobody has, nobody can read minds. That's the dilemma. Right. And so you do have to look at the circumstances here, and I... Again, I emphasize that it is a subjective test and it's a fairly high bar. But let me ask you, this comes to mind. Somebody on social media, in all forms, threatens a public official. It goes on all over the world. In his defenses, as you're alluding to, gee, I never threatened anybody directly. How do I know the judge is going to find out about this? Would that strike him as appropriate behavior beyond the reach of the criminal law to do that? Um... I think that case actually would be distinguishable because with social media, you're broadcasting it to the world. This was a statement that was made within the confines of a booking area that, again, there was conflicting evidence about how much, how noisy this booking area really was. I think we can draw on our collective experience about what booking areas are often like. Um... But even assuming it was relatively quiet, and there certainly was evidence that he was speaking loud enough to be heard from five or ten feet away. Um... The courtroom was separated by what one of the state's witnesses called secured doors and lock... secured doors and hallways. There wasn't any evidence about exactly how far away it was. There's no evidence that the defendant wanted it communicated, wanted the threat communicated to the judge. In fact, the only evidence about that is that Deputy Oladi admitted that, uh, no, he didn't ask me to relay the threat to the judge. Well, I'm sure the state... There was a direct threat to the judge, but, you know, we're construing the words indirectly. This didn't take place at the local bar down the street. This was within the confines of the court room area, so to speak. I'm trying to envision a situation where the threats made to law enforcement officers right outside of the courtroom would not be Well, it... I'm not just doing it as a threat. It was a threat about the judge. It was a threat made in the presence of law enforcement officers. Um, I don't think that's a threat to the judge. To me, that language means face-to-face or on the phone or even through the mail addressed to Judge Tracy, you know, this is what I'm going to do to you. Um, or even something posted on a Facebook account or a Twitter or whatever. Um, this was a threat about what he was going to do made in the presence of law enforcement officers, and it was relayed to her, the judge, indirectly via a third party, uh, without the defendant asking that be done. Now, I'm not taking the position that there has to be such a request in order for the state to meet its burden, but in this particular case where there's evidence that the officer who claimed that it was his duty to report it to the judge didn't do that. Uh, there was no evidence that he made any effort to make sure that it was done. He left. Um, the defendant's really made better, under those circumstances, the defendant's going to conclude, it's not, can't be said to have been consciously aware that it was practically certain that his threat was going to be relayed to the judge. He might have, if this were recklessness, then yes. But it's not recklessness. It's knowledge. And if the General Assembly wanted to provide greater protection to public officials, and this might be a wise thing for them to do, but they haven't done it, they could amend the statute to make it reckless. That it, if you, if the risk that is going to be conveyed to the judge, or to the public official, um, if you consciously disregard that risk, and it's a substantial risk, that would be recklessness. But this has to be practically certain. And, um, where, where in the statute does it say it has to practically be certain? Why doesn't, doesn't the word indirectly, uh, suffice? The, the statute defining the offense says, uh, knowing deliver or convey directly or indirectly, et cetera. Practically certain isn't the definition of what it means to act knowingly. That that's the result. Practically certain that the result will follow from the result. So it's a different burden of proof? It's practically certain instead of beyond a reasonable doubt? No, it's beyond a reasonable doubt whether it was practically certain. As opposed to being practically certain that it was beyond a reasonable doubt. Right. It was a, could a rational jury have found beyond a reasonable doubt that he was practically certain that this would follow from his conduct when they heard evidence that one of the law enforcement officers himself did not report it. He did not report, but he acknowledged that any law enforcement officer would. He just chose not to. He, he chose not to. And it's his, it's only his testimony that it's not predicted that any, any law enforcement officer would have the duty to. But it's really a question of whether you can impute that knowledge of the duty to the defendant. There's no testimony that the officer told the defendant, look, I'm going to have to tell the judge. Well, so we, so the case turns on what, on the officers, this particular officer's declining to report it to the judge. So we would have to find here that if somebody walks out of the courtroom, starts spouting off about the judge having an AK-47, et cetera, et cetera, it's not perfectly certain that that's going to get conveyed to the judge. That's what we have to find, right? You have to, right, that it would, that, that threat would be the stuff about the AK-47 I think was actually in reference to stuff he was going to do to the police and so forth that he wasn't charged with. But But don't we also have to kind of look at the circumstance? There had been just a, either a denial of bond or a substantial bond set. He knew he wasn't going to be released in the foreseeable future. And this was a threat, clearly, and you've agreed to that. But it was not I have a hand grenade under my shirt. That I think would, you would agree, would require far more urgency as opposed to a rather vague threat. And this guy's going to the Kane County Jail and he's, there he's And one of these officers then notifies Aurora PD. And they're the ones then that take up the mantle and Right. Because didn't, I mean, isn't it also reasonable to conclude this, this field court or court where this took place was actually not in the Sheriff's Office jurisdiction but was in Aurora? And therefore that's why they called Aurora PD? Well, the booking department is in the basement of the Aurora Police Department as I understand it. Right. As opposed to Sheriff's Office jurisdiction? Right. There were court detention officers who were employed by the Aurora Police Department also present. There's no evidence that any of them told told the judge. But I think the point is that you mentioned about the imminency of the threat. And I think that's, that would be a stronger case for the state. Again, where you wouldn't have direct knowledge where you know, that the defendant makes an admission, you know, I want you to make sure you tell the judge that I'm going to do this. Here you have as was described in the closing argument, and I'm not saying that the jury has to believe the closing argument necessarily, but in the context I think it's understandable that this might be someone who's upset about being arrested, upset that he wasn't allowed to speak because he wanted to speak during the bond hearing. And for lack of a better term, spouting off. He was going to jail for 30 days because he was being held in contempt. Whether he was going to be able to make bond or not in the other case, I don't know. But he didn't, the threat wasn't imminent. He had no means to execute it. True. I'm looking at that in terms of how quickly the threat is communicated. Right. I have a hand grenade. We're going to stop bond court. We're going to deal with this right now as opposed to you know, it's not an imminent threat because credible threat, imminent threat is not an issue. It's just a threat. I mean, isn't that... I mean, I see what you're... I kind of see where you're going, but we have to balance this. Right. I understand Your Honor's point, and I guess my point is that, you know, let's go back to saying, repeating myself, that it's a question of whether Mr. Garcia subjectively was practically certain that at any time somebody was going to report this, I don't want to say it's a vague threat, but vague in the sense of when and how exactly he was going to do this to the judge as opposed to ignoring it as the angry words of somebody who's, you know, people aren't usually happy when they've been in bond court and they're under arrest and they're going to jail. And so that it would have been reasonable for him to think, you know, I'm just blowing off steam, nobody's going to report this. It's out of my mouth, it's over, it's done. Again, not that the state had to prove that he intended to follow through on it But didn't he also make the threat repeatedly? Well, that's a little bit unclear because you have multiple witnesses and the language differs. Two witnesses I think heard him say that he was going to break the judge's neck. One witness said that he heard Mr. Garcia say he was going to kill the judge. Whether that was said sort of all in one phrasing or at different times, that's not really clear, but it doesn't really matter how many times it happened. I don't think, although the more it happened, probably the more likely it would be that it would be reported. I know I've exceeded my time and I thank the court for its indulgence. I have one or two questions. Relative to the practically certain, is what is supposed to be practically certain is the idea that somewhere in this game of post office that the judge will be apprised of the threat or is it that the defendant has to be practically certain that he knows who the people are that are going to transfer the threat or convey the threat to the judge? Meaning, is he supposed to know that it goes from the police officer or from any police officer? Does he pick the second or the third police officer? Does he pick Trudzowski instead of the first officer that came on the scene? Does he determine as a practically certain situation that that person then calls the judge's office, talks to the secretary, she writes a note, gives it to the bailiff, the bailiff then takes it to the judge, either in chambers or on the bench. What is this practically certain? Is it that the judge is actually given a notice of the threat or is he supposed to actually have some idea as to the chain of events that supposedly will convey this? No, I think it's the former. Just that reading the statute is that he knowingly delivers or conveys, directly or indirectly, a threat. So it doesn't say that he has to know who's going to do it or exactly how it's going to happen. So what the bottom line then is or the condensation of your argument is whether or not a rational try or effect could decide whether or not this scenario would result in a rational try or effect deciding beyond a reasonable doubt that it was practically certain that your client knew or had knowledge that this threat was going to be conveyed to the judge. I would phrase it slightly differently, that he had knowledge because he was practically beyond a reasonable doubt that he had knowledge in the sense that he was practically certain that it would be directly conveyed, but I think we're trying to express the same thing in different words. So we've at least that's the bone of contention and it is not in contention that what was actually said by your client was questionable as to whether or not it was a threat that would come within the definition of a violation of the statute. No, I think if you say you're going to kill somebody, that's a threat. Okay. I don't have any other questions for you two. Thank you. You'll have an opportunity to make rebuttal. Is it pronounced Virpil? Yes, or Virpil, Your Honor. Virpil? Yes. And it's Joanne. Thank you. You may proceed, Ms. Virpil. Good morning, Your Honors. Good morning, Counsel. Good morning. And may it please the Court. My name is Joanne Virpil and I represent the people in this matter. Now, as discussed by Justice Hudson or as pointed out by Justice Hudson, knowledge is the conscious awareness proven by particular certainty or substantial probability. Now, to prove those things it's by circumstantial evidence, not direct proof as addressed here by the defendant. In this case, Your Honors, there is circumstantial evidence to show that the defendant made these threats indirectly towards Judge Tracy. The evidence is pointed out, as Justice Jurgensen pointed out, that this was in a booking facility. This is a public courtroom. After cursing and swearing and being held in contempt, he states these threats, that I'm going to kill you, or I'm going to kill her, I'm going to break her neck, that I have AK-47s, that I'm going to blow up the building in front of four law enforcement officers. Now, the discrepancy with regards to repeated threats, Officer all day said, after I tried to calm him down and inform him that he had 30 days to hold a sentence, he then repeated those threats. He made them louder. He did not pause. There was no hesitation. There was no mumbling of any sort. This was specific threats made about Judge Tracy, as conceded by the defendant, directly to these law enforcement officers, and then they informed, they then went and informed a person to investigate. They investigated this and saw that these threats were credible, and went and went back to Judge Tracy's courtroom and told her of these threats. Now, Your Honors, there is circumstantial evidence here to prove that the defendant did commit this crime. Additionally, Your Honors, the defendant points out that Officer Old All Day, in his testimony, stated that it's inconceivable if someone were to hear these threats and did not inform the judge, but he did not inform him. As also pointed out by this court, yes, he didn't inform them, but just because he said it's inconceivable does not mean that anyone else could not inform the judge, just as what happened here. And if we go into reality circumstances, Officer Old All Day is in a booking facility. There are other defendants there, not other defendants, sorry, there are other criminals there, there's a motion going on. With the way that the defendant is stopped, the way the defendant has approached this, it's as if Officer Old All Day would have had to stop the defendant, say, hold on, wait right here, let me go and inform the judge of those threats that you just made, and then we can go, which is not the case. I'm not quite sure I understand why multiple defendants' presence is relevant. Sorry, not multiple defendants, multiple criminals. The reason why it's an issue, Your Honor. Why would anybody be practically certain that a criminal would convey these threats to a judge? No, I'm sorry, Your Honor, that is not the way I was trying to approach this. It's discussing Officer Old All Day and his saying that it's inconceivable to hear these threats, but then not inform the judge of these threats. And the way that the defendant has approached it or stated it is if he had been informed, he should have then gone directly and told Justice Tracy of the threats, but that could not have happened at that time. Yeah, what do you make of that argument? His argument is that, you know, that bears on the defendant's state of mind, because if the officer himself didn't go and directly report it, then that's an indication that the defendant would not have a reason to believe it would get reported. No. How do you respond to that argument? Your Honor, the people believe that when you make threats in front of three or four law enforcement officers, just because one does not go back does not mean that those threats, you are not particularly certain that then those threats would be conveyed to Judge Tracy. No. Officer Old All Day did not go and tell him, but then they did inform someone else who went and investigated, interviewed those officers, and then went back to Judge Tracy and informed her of those threats, Your Honors. So just because the officer directly or personally did not do it does not mean that the three other officers could not have done it themselves. Is it your point that there's other would-be inmates or detainees in the lockup is because these officers had something else to do at that moment besides sit right there, don't move, and go talk to the judge? Yes, Your Honor. Additionally, Your Honor, it ought to be pointed out that the defendant has also conceded that these were threats. These are threats that are made indirectly to Judge Tracy by stating this in front of three or four law enforcement officers. Under the statute, Your Honors, that is what this defendant did. He made specific threats in a public area about the judge, about to kill the judge, I'm going to kill the judge, I'm going to break her neck, I'm going to blow up the facility, and saying that he had AK-47s. These were specific threats made in front of three or four law enforcement officers that went back and then told Judge Tracy. That is the language of the statute when looking and following the statute correctly. If there are no further questions, Your Honors. When the people ask that you please affirm the lower court's decision and find the defendant threatened a public official. Thank you. Mr. Rogers, rebuttal. Just a couple points. Factually, I'm not sure that I agree with counsel that the record is so clear that there were multiple threats. Wouldn't it be unusual if you totally did agree with counsel? You don't even apologize for that, Mr. Rogers. I agree when it's true, and if it's not true, then I wouldn't agree. In this case, I'm not sure that I agree because my recollection of the record is that it's possible there were multiple threats, but it's also possible that there weren't. I don't think that was clearly established. But again, I don't know how much that matters. I suppose that the more threats there were, the more likely it would be that somebody might think they would be repeated. But... Are you saying that the multiple threats were directed at different people and therefore they were singular in nature but alternative multiples? I don't mean to quibble there semantically with you, Your Honor, but I don't think the threats were... Maybe I misheard you. The threats were about... All the threats we're talking about here were about what he was going to do to Judge Tracy. They were made in the presence of multiple people, including some of the other detainees. Now suppose... There's an example of a case where it would be... So therefore those might be what you were disagreeing with when you said that they weren't multiple because they were directed against a third party. Well, I'm talking specifically about threats against Judge Tracy but I'm not sure that the record's clear that there were even multiple threats against her. Well, I wasn't sure that she was referring to multiple threats only as to the judge. Well, perhaps then there is no disagreement about that. We need to get a baseline in order to understand whether or not you're actually disagreeing. Okay. The other thing is I think that there was a reference to the Aurora officer determined that the threats were credible. I don't think there's evidence of that. The timing of the reporting when Officer Drozdowski actually reported it, I don't think that's actually established. Obviously there was some time gap here. I think that is a relevant factor because the longer it takes to report it, I think the less likely it is that the person who made the threat can be said to have been practically certain that it would occur. I mean, not to make up wild law school-type hypotheticals here, but I mean suppose nobody was telling you about this that particular day. Suppose they waited a week. Suppose Judge Tracy happened to hear about it at a social function where one of the correctional officers was or one of the state's attorneys was. Remember that guy that was in the courtroom that day that got really angry and you held him in contempt? Well, guess what he said when he was back in lockup? How long do we go out here to know that... Is the critical moment at the time the threat is made or conveyed or is it... Do we look to what may have happened under your scenario a week later? I don't know that the fact that it was a week later, two weeks later, really resolves the issue or is particularly relevant. The question is whether or not the threat was made directly or indirectly and it was likely, you know, practically certain to be conveyed. Would it matter how long it took under the statute? I tend to think it wouldn't matter. Well, my point is that the longer it takes, the more it shows that someone is... the less practically certain somebody would be. And again, you know, you can play around with all kinds of... Yeah, but then the criminal conduct turns on the actions of a third party though, doesn't it, in that scenario? Yes, but what you're talking about when you're talking about indirect threat is it's going to be through a third party. Well, if you mail a threat, then I think it might be safe to say that there would be a delay of anywhere between two and however many days it took for the mail to be delivered. Can we take condition notice of that? Yes, we can. Yeah, there would be at least one mail delay. I don't think that the mailbox rule would apply in consideration of this case, but what I'm bothered by relative to your argument is you're talking about the defendant wasn't proven guilty beyond a reasonable doubt and the implications of your argument is as if this is a de novo review and we're supposed to determine whether or not we believe that this is beyond a reasonable doubt as opposed to whether or not a rational try or a fact could have decided what the facts were here that established that he was guilty of a crime. And so when you start talking about hypotheticals about the length of time and whatever, those are facts specific that relate to a hypothetical case that has nothing to do with whether or not a rational try or a fact would have found this defendant guilty under this set of facts. So as soon as you start throwing examples at us, it's as if you're, at least to me, you're arguing that we have the ability to make de novo review and we're supposed to re-decide this. And I want to point out that such arguments don't work because I'm supposed to sit here and decide whether or not a rational try or a fact would have determined whether or not he was guilty. And so if you would limit your arguments to why the try or a fact committed error, I would appreciate it. Well, Your Honor, I believe I started out by saying I'm cognizant of the standard of review and I agree with you that that is the I'm not asking this Court to review this de novo or act as a second jury. I understand that's not appropriate. And straying in hypotheticals may be inadvertently misled, Your Honor, as to what my intent was. Why I think the irrational try or a fact here could not have found that the State proved beyond a reasonable doubt that the defendant knowingly made a threat, knowingly conveyed a threat to the judge indirectly is that under the circumstances the jury just couldn't when you keep in mind that it's a subjective standard for knowingly and it's a pretty what I call high bar for knowingly, the practical certainty that just isn't met under the facts of this case. It is fact specific and that's my position that I'm advocating for Mr. Garcia and that's the basis for asking that his conviction be reversed. Okay. Thank you. Thank you. It's the end of the case is on call today. The Court is adjourned. We'll be in conference all afternoon. I hope it renders dispositions as appropriate.